Case number 22-2340 from Nebraska, Elijah Wells v. Creighton Preparatory School. Alright, Mr. Altman. Good morning, your honors. I'm severely visually disabled, so I may not be able to tell who may be asking me questions, so I apologize if I'm not looking at you. I'll do my best. I understand, and I've been advised that you would like to reserve three minutes for rebuttal, and I'll try to remember to alert you with the three minute mark. Thank you very much. May it please the court. One thing that is not disputed here is that no Title IX investigation of the matters at hand was ever conducted. It just wasn't done. The second thing that's really important here is that there are two types of Title IX situations that come before court. One is when there appears to be a sexual discrimination of some kind against an individual. The second is when there are allegations of sexual misconduct, and we're not talking about whether there's discrimination against Mr. Wells, young Mr. Wells, because he's a man. That's not really the issue here. The issue here is there was no question by anybody that the allegations here were sexual harassment of an individual who wasn't actually even part of the conversation and didn't even know what was going on, but for somebody overhearing a conversation that two individuals had believing that they were having a private discussion, that there was nobody eavesdropping over their conversations. And that, I think, is incredibly important here, because the investigation that took place in these matters was nothing more than a browbeating of Mr. Wells and an abuse of his rights. What didn't he get? Let me ask you this. The point on the harassing is interesting, and I don't want to leave that, but isn't this different? So had he been the victim of the harassment, then it could be discrimination based on sex. But here the allegation is that he was the one who was perhaps doing the harassment, saying whatever about the teacher. And so I guess my question still is what is the discrimination against him based on sex? There is no discrimination against him based on sex. Under Title IX, there is a very specific policy and set of procedures of how allegations of sexual harassment amongst individuals within the educational institution are to be adjudicated. Period. Full stop. It's not optional. If there's allegations of sexual harassment, Mr. Wells was entitled, and the rules changed in August of 2020, Mr. Wells was entitled to a Title IX notification. And that Title IX notification, he was entitled to know the who, what, when, and where of what it is that he did. He was entitled to be informed that he has the right to have an advisor with him every step of the way. From any interview that takes place through a hearing, well they don't have to do actual hearings in the secondary schools, they can be done by a hearing officer. But his advisor has the right to be present at all times. There has to be an investigation. There has to be an investigation report. All the evidence collected by the investigator must be presented to the parties for them to review and comment upon. So the argument is not that he was discriminated based on sex, but I read the district court to have construed the complaint that way. Am I right that the district court did, or am I missing what the district court was saying? That's exactly the problem here, Your Honor. Respectfully, the district court did not understand that the way to adjudicate a Title IX violation of sexual harassment has nothing to do with discrimination. This is not a question of whether Mr. Wells was discriminated against because he was male. This is a question of that the school did not use the Title IX process that he was entitled to. And it has a dramatic effect of what went on here. When Mr. Wells was questioned, he was beaten, not physically, but he was browbeaten by the dean. And was, you know, just assaulted verbally by the dean. He had the right to have an advisor there. That never happened. His parents were informed. This is a young man. Now, you know, Dell versus University of Arkansas is directly on point here. That says, if this is an apparent Title IX violation, and there is no question that it is sexual harassment, then these are the policies and procedures that must be followed. Didn't happen here. Would you articulate why this is sexual harassment? Well, that's the school made the determination that it was sexual harassment. That's the fundamental question. There's a concept here under Title IX called SPOO, which I had never heard of, and somebody educated me on it. Severe, pervasive, and objectionably offensive. That is the requirement. I mean, if there's physical contact, we're in a little bit different world. But that didn't happen here. This is what was believed to be a private conversation between two people. And the question is whether the sexual harassment constituted SPOO. Now, one of the things that's important is that a Title IX investigator, after the investigation is complete, must make an assessment, almost like a motion to dismiss, taking the allegations as true. Does this constitute a Title IX violation? And that never happened here. They just simply decided, before he even walked in the room, that he had committed some sexual offense. And the school cannot say this wasn't, we didn't consider this sexual harassment. That's the fundamental basis that this was sexual harassment. And I don't think I have to go into the details of the conversation. But this was, for lack of a better term, locker room talk between two individuals believing they were having a private conversation. And nothing more. There was no evidence. You know, I don't think the exact merits of the issue are really relevant here. Because he didn't get the process he was entitled to. That is the fundamental problem here. Can I ask you then, on this theory on the procedural, we'll call this the procedural arm, or the procedural deficiencies. Is there a private right of action to enforce the lack of a counselor, you know, in the principal's office and all of that, in Title IX? Yes, Your Honor. Where is it located? Your Honor, I can't give you the exact citation, but there is Title IX litigation in this country every single day. And there would be no Title IX litigation otherwise. On the procedural issue? On the procedural issue, absolutely, 100%. He did not get the process he was entitled to. He's a young man. I mean, having the dean of the school browbeat you repeatedly, you know, over the issue. I mean, even if you take that, you know, what they claim was said was true, and that's disputed, but you never really had a chance to take on that issue. It doesn't rise to the level of a spoon. So if you take a look at it, and that's part of, you know, one of the issues, one of the bases here. The punishment that Mr. Wells was issued was way out of proportion for what was said. He allegedly made one statement, which he says is not what the school says, in what he thought was a private conversation. That subjects him to being expelled. This wasn't a direct threat. I'm going to go do something to somebody. Maybe. You know, in that case, this wasn't a threat. I'm going to sexually assault this particular person. None of that happened. This was a one-off comment discussing their thoughts on a particular counselor at school. There are fights that take place at school. There's cheating that takes place at school. Those things are far more serious and far more of a risk to the school than what took place here. Those people don't get expelled. Well, let me ask you this to make sure there's no misunderstanding here. Look back over it as you've been speaking. Look back over your first amended complaint. So what I'm hearing you say is that Mr. Wells, the allegation is that Mr. Wells was accused of sexual harassment. And then the things that you complained of, the procedural deficiencies and harsh treatment, etc., all came into play during an investigation of that accusation. Well, there really was no, not much of an investigation. Certainly not in what was contemplated under Title IX. Like I said, Title IX has to be investigated. So he was accused of sexual harassment. Who was the victim of the sexual harassment? It was a counselor who didn't even hear the comment. The person who heard the comment is not the person that the comment was made about. But the school decided that this was sexual harassment and treated it as sexual harassment. Well, you can't have it both ways. If you're going to call it sexual harassment, you're going to treat it as sexual harassment. You must follow the Title IX rules. Did anyone with the Appalachian School call it sexual harassment? Yes, Your Honor. How and where in the record is that and what form was that statement made? This is a motion to dismiss, okay? We're not at the summary judgment stage. This is my client's recollection of the events is that they referred to this as sexual harassment. That the basis of his dismissal was sexual harassment. They used a video without audio to support the argument for sexual harassment. I don't think there's any question that this was a sexual harassment issue here. They raised some other things that were relatively minor. Supposedly they accused his girlfriend of calling the school to try to get him excused from absences. That was kind of brought in at the end. It was never raised with his parents before that. One would think if that was a real serious issue, that would have been raised with his parents. It never was. This just was, frankly, manufactured at the very end game. Nevertheless, Mr. Wells was dismissed from the school for a comment that he disputes making without being afforded the process that he was entitled to. Two other brief points before I sit down for my rebuttal. There was the dismissal of the state law breach contract claim. I think that was purely because the federal claim was dismissed. The court was not going to keep supplemental jurisdiction. It would seem to me that if this honorable court reverses the district court and reinstates the Title IX-based claims that the breach contract claim would also come in as part of that. And the second thing is the court made no showing that amendments were futile. Any allegations by the court appear to be that there are some facts missing. Well, if facts are missing, then there's no demonstration that an amendment would be futile. And we think the complaint should have been dismissed. Well, we don't think the complaint should have been dismissed. But, if it was dismissed... You're running into your rebuttal time now. Yes. Thank you, Your Honor. I'll sit down. Thank you. Mr. Gehrman? May it please the court, my name is William Gehrman. I'm here today representing the AFL-E Cricket Court School. We're asking the court to affirm the district court's order which dismissed the Title IX claim with prejudice. We certainly concede that the complaint alleges procedural failings. We concede that the complaint alleges erroneous or unjust or unfair expulsion according to the plaintiff's facts. But what the complaint fails to allege is any link to the plaintiff's sex. There are no facts. The plaintiff's own complaint would tie anything that happened here to the plaintiff's status as a male. Well, he admits that. He says today, I heard him say, well, yeah, there really wasn't any sex discrimination. But I didn't get the procedures in that claim of sexual harassment. And, Your Honor, there's a Supreme Court precedent that addresses that point. It really says those alleged procedural failings do not create a cause of action under Title IX. We cited that case in our brief. It's 524 U.S. 274. And it just says the failure to promulgate a grievance procedure does not itself constitute discrimination. And it goes on to talk about what the private right of action is under Title IX. And it clarifies that the types of things the plaintiff has alleged here just don't create a private right of action. Now, if he had linked some of those issues to something based on his gender, something based on his status as a male, that would be a different story. But in this case, the district court correctly pointed out that there really is nothing on the basis of the complaint that links any of this to his status as a male. Well, what I heard was that the claim is that the amended complaint asserts that he was accused of sexual harassment. So we think it's a little more particular. Would that suffice? We don't agree that that would suffice as something that would link the way he was treated to his status as a male. The particular allegation of the complaint, I think, is that the school caught him or claims to have caught him making a rude remark about a female faculty member. That female faculty member who was the subject of the rude remark is the only female described on the face of this complaint. In fact, the complaint alleges that this is an all-male school. The other characters set forth on the face of the complaint are all either male or ungendered. There's a faculty staff member mentioned who's not given a gender one way or the other. Well, in paragraph 37G, the allegation is that the plaintiff was not given the opportunity to present any meaningful defense on his own behalf or to rebut the claims of sexual harassment made by Creighton's staff against him. Sure, but what's lacking in that sentence would be anything that says, you know, because he was a male, he wasn't afforded this or that, a rebuttal ability, or any other procedural thing that you think he may be entitled to. Again, in order to meet this court's pleading standards, he really needs to link all of this to his status as a male, and there are no facts that link this to his status as a male. Well, I mean, don't we know from the complaint what his gender was, and don't we know the gender of the teacher or the employee that the rude remark was concerned? Yes, we do know. So, isn't that just, we can just draw all of that, kind of bake into the complaint? I don't think you can make a jump there and say that the school is treating this plaintiff differently based on his status as a male. Again, we'd be looking for something more like an allegation that this school treats female students differently when female students are accused of sexual harassment. And again, the plaintiff is an all-male school, but even outside of that fact, there's no allegation here that there are similarly situated comparators. This circuit has held previously that accusers are not similarly situated comparators for the purpose of a Title IX analysis. So, either you take the individual who's the subject of the rude remark, the individual who the rude remark was made about, that person certainly is not similarly situated comparator to the plaintiff. The faculty staff member who overheard the plaintiff make the rude remark is definitely not a similarly situated comparator. So, if you start to do any kind of discrimination analysis under Title IX, this complaint really is insufficient. Certainly, he's not limited to only pursuing a similarly situated comparator argument. He can make other types of arguments, but there is no theory on the face of this complaint that actually links what's going on to his gender. And we think the district court really nailed the analysis on that point. The district court's order itself goes into this in great detail and we think provides the correct analysis. In addition to that argument, your honors, we're also advancing a religious liberty argument today. The religious liberty argument was not fully fleshed out in the district court's order. The district court really said that this Title IX claim is just really insufficient and therefore we're not going to talk about the First Amendment. We've raised the First Amendment here again on this appeal. We think the First Amendment serves as an alternative basis to actually either find that the complaint fails to state a claim upon which relief can be granted, or to actually hold that there's really no jurisdiction over this type of claim, this type of case. The First Amendment argument really, in short, is that as a religious school, the defendant, an appellee, needs to have, and the First Amendment does have, a lot of discretion to make personnel choices, to institute a disciplinary policy. We cited a stream of Texas state court cases. Obviously, I'm not binding on this court, but we think the Texas state court cases have really helpful analysis and we're asking the Eighth Circuit to actually adopt those Texas... What is the religious component of this? Now, let me just give you a hypothetical. I could see it, for example, if this student was expelled because, for example, he didn't pray when everyone else prayed during a trip to the chapel, or he said things that were blasphemous to the religion to other students and started, you know... But here, we've got a simple, what appears to be a purely civil or secular dispute between, as opposed to counsel, but a locker room talk. So, I'm trying to figure out what the religious component is, other than it is a religious school making the decision. Sure. There's two good responses to that, I hope. So, for one, the Texas state court cases that we're asking this court to really adopt the reasoning of, they have all sorts of disciplinary actions set forth in there, some of which implicate religious doctrine, some of which do not. So, the First Amendment argument today, admittedly, is broad, but it would say that even if it is something that could theoretically be decided on a secular basis, that, yes, because it's a religious school, the religious school needs, under the First Amendment, an ability to make personal decisions, really free from secular court interference. The second argument I would say... Before you go to the second one, would that mean that you cannot sue a religious school, period, under Title IX for any kind of decision they make on expulsion or suspension? Under a disciplinary procedure, yes, that's what it would mean. Sorry, Judge Kovats. That's where I was headed. Our second point on that would be that the plaintiff's complaint does allege that the allegation here, and he disputes the allegation, but the complaint alleges that the investigation was in a lewd remark. And I think if you were to really get into the meat of this case, you'd see that everybody maybe has a definition of what's lewd, what's extreme. Another point raised in here is that the expulsion was really unfair or excessive punishment. Well, in a religious context, what's lewd and what's not, and what's excessive in light of how lewd the statement was, I think those are going to be things that turn on morality, religion, questions of moral character, and those are things that are going to have a religious tint to them. If you were to take this case all the way to a jury trial, I think it would be very difficult not to entangle a secular court with religious issues when you have school leaders talking about why these decisions were made. So, counsel, let me ask you this. If we were to agree with you here, and I think I heard you say that we would lack jurisdiction under your theory, and therefore the district court lacked jurisdiction as well, the district court here dismissed with prejudice. Does that mean if we agree with your second argument, we would convert this to a dismissal without prejudice? We think you could do it two ways. One would be that it could be stated as a barrier to state of conduct. That's another way that you could construe this argument. But certainly, if the ruling here is that today this court lacks jurisdiction, therefore the trial court lacks jurisdiction, yes, I think it would have to be an opinion that does in fact undo what the district court did because the district court in fact wouldn't have had jurisdiction at the time. Really, the order that the district court should have entered would have been one for lack of subject matter jurisdiction based on First Amendment principles. What do we do with the ministerial exception line of cases? That's my biggest problem. If that says, well, it's not jurisdictional, I think it's Trinity Lutheran, and that dealt with an employee, so we would be saying when it deals with a student, it is jurisdictional, but a similar doctrine applied to employees is not jurisdictional? So I think in the ministerial exception cases, a lot of them have pretty advanced factual records. They were disputing whether, you know, what the employee actually did, you know, were they teaching the kid's religion or not, things like that. I think in this particular case, because of the nature of the complaint, this court could look at the complaint alone and get there. It certainly would concede that there could be other complaints that don't get you there because maybe the ministerial aspects are not obvious, maybe you don't have an allegation of lewd conduct the way you do in this case, or, you know, you could also imagine a complaint where somebody doesn't properly allege that the school is a religious school. We think in this case, there's an allegation that it's a religious school, there's an allegation that a disciplinary procedure was enacted based on an allegation of lewd conduct, and that's enough to get us there in our First Amendment analysis. But that would not be the case in every case for every complaint. So the First Amendment argument is an interesting and important argument, but it certainly doesn't have to be touched on today. This court could simply just affirm the district court's order with respect to the Title IX claim simply failing the standing claim. We think that is probably the simplest and most straightforward way for the court to get there because, like the district court found, there really are a lot of insufficiencies with this complaint, that there's nothing, there's no facts set forth in the basis of this complaint that link this expulsion to this student's gender. Again, the Supreme Court has stated that procedural failings alone do not give rise to a private right of action. And with all respect to hosting counsel here, I do think the argument we heard today from him was kind of a departure from the amended complaint, from any of the briefing that's taken place in this case. And I think the way that hosting counsel framed the case today was perhaps not actually assigned as an error. Up until today, we really thought that his claim was that he was discriminated based on his gender. But nonetheless, even if this court now thinks through it in terms of the procedural side, those alleged procedural failings do not constitute a, do not give a plan for a private right of action in the Title IX. And so, like I said, everything I'd like to say today, so unless there are any other questions, I'd be happy to cede the rest of my time. Thank you. Mr. Alton. You have just under three minutes. Thank you, Your Honor. With respect to the counsel's argument about the First Amendment, what he forgets is that when the school takes money from the federal government, which is alleged in the complaint, it agrees to comply with Title IX. So his First Amendment argument goes out the window. There is an allegation that they accepted federal funds. That's it. They can't say now, well, we took federal funds, we agree to comply with Title IX, but we really don't have to comply with Title IX. So I think that takes care of the First Amendment argument. With respect to not having an argument here, frankly, Your Honor, it's ludicrous. He did not receive any Title IX protections. This isn't a simple deviation. He was supposed to, you know, get this little piece, and he didn't. They did not follow Title IX in any way, shape, or form. To suggest, and he was expelled because of it, to suggest that there's nothing that he can do about it just defies all logic and reasoning. I mean, you know, it might be different if, like I said, there was some minor deviation, they did this versus that. And there is, that is federal law. They've agreed to abide by it. They can't just simply discard it because they want to have their own religious practices. But then again, it seems to be arbitrary and capricious. Does that mean they can make it up as they go? Some kid can get into a physical altercation with another kid, get into a fight, and he doesn't get expelled? And my kid who allegedly makes a lewd comment gets expelled? How can you say that doesn't mean, you know, they can have their own standards, but you've got to apply them consistently. You can't just simply say, well, we don't want that statement, so we're going to expel him. But these two kids who got into a fight, we're just going to suspend them. That just, it doesn't make any sense. It has nothing to do, there's not a single issue in this case about religion. And by Brother Council's reasoning, a school that's a totally male school, how could you argue that the fact that they did not in any way follow Title IX was on the basis of sex? Everybody's a male. It doesn't make any sense. There's no females to compare it to. How could you possibly ever allege that this was done because, you know, it is because he's male. He's a male talking about a female. So at its core, well, that's not really where we're going. It still is fundamental to the claims here. I think I'm out of time. Thank you very much, Your Honors. All right, thank you. I appreciate your arguments this morning. The case is submitted, and the court will strive to issue a decision as soon as possible. Let's stand aside. Thank you very much.